IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND CALLAHAN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-6977 |
| | : | |
| BOROUGH OF BRISTOL, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                     **July 31, 2012**

In this action pursuant to 42 U.S.C. § 1983 and state law, Plaintiff Raymond Callahan sues the Borough of Bristol and Borough Police Officers Elifa Soto and William Davis for damages resulting from his arrest and incarceration on drug charges of which he was ultimately acquitted following a jury trial in November 2009. Defendants ask this Court to dismiss Callahan's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because it is clear from the Amended Complaint that Callahan's § 1983 claims are time-barred, Defendants' motion will be granted as to those claims. Callahan's remaining state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**FACTS**[1]

On February 10, 2009,[2] Officer Soto applied for a warrant to search the second-floor

---

[1] In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept as true the well-pleaded factual allegations of the plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court may also consider "exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Callahan has attached to his Amended Complaint a number of documents from his underlying criminal case, including transcripts of the preliminary hearings held on June 24, 2009, and August 5, 2009. The following factual summary is drawn from Callahan's Amended Complaint and the exhibits attached thereto.

[2] Although the Amended Complaint alleges Soto obtained the search warrant "[o]n or about Tuesday, February 9th, 2009," Am. Compl. ¶ 13, all of the documents from Callahan's criminal case suggest the warrant was issued on February 10. Whether the search warrant was obtained on February 9 or 10 is immaterial to the disposition of the instant motion. Therefore, for consistency with the

apartment (Apartment B) in a two-unit building located at 1017 Beaver Street in Bristol Borough, Pennsylvania. Soto himself placed Callahan's name on the warrant, which was based solely on information from a confidential informant. Soto had no "eyewitness documentation" of any illegal activity at the apartment before he applied for the warrant. Am. Compl. ¶ 14.

While awaiting the search warrant, Officer Davis conducted surveillance of the building from a parking lot across the street. During his surveillance, Davis twice observed Callahan step onto the stoop of the building, first to retrieve a pizza that had been delivered and, later, to let another man into the building. When the other man arrived, Davis watched Callahan and the man proceed down the steps toward the basement of the building. Upon learning via radio that the warrant had been signed, Davis approached the building and saw Callahan following the other man up the basement steps. Davis drew his gun and told the men to stop, but Callahan turned and ran back down the steps, slamming the basement door behind him. By the time Davis forcibly entered the basement, Callahan was no longer there. Davis then proceeded upstairs to the second floor where he, Officer Soto, and other officers executed the warrant and searched Apartment B. There was a woman in the apartment when the officers arrived; however, she did not respond when the officers announced they were there with a warrant, and the officers thus forcibly entered the apartment. They recovered $5,440 in cash and marijuana packaged in sandwich bags from a safe in the apartment, and found $240 in cash, more marijuana, and a digital scale in the bedroom.

On June 24, 2009, a preliminary hearing was held at which Officers Davis and Soto testified to the facts set forth above. At the conclusion of the hearing, the district justice dismissed the

---

underlying criminal case records, this Court will refer to the warrant as having been obtained on February 10.

charges against Callahan due to the lack of any evidence linking him to the apartment in which the drugs were found.[3]

The police thereafter obtained a new warrant and rearrested Callahan. On August 5, 2009, a second preliminary hearing was held at which Officer Soto testified that during the search of Apartment B on February 10, 2009, officers found a Pennsylvania driver's license with Callahan's name on it in the bedroom of the apartment. Soto also testified a car registered to Callahan at the apartment's address was parked behind the building. Based on Soto's testimony linking Callahan to Apartment B, the district justice held the charges against Callahan over for trial. Callahan remained incarcerated with a high bail while awaiting trial. Callahan proceeded to trial, and on November 13, 2009, a jury acquitted him of all charges. As a result of the charges against him and his incarceration pending trial, Callahan lost his apartment, his car, and his job. He also suffered injury to his reputation and public humiliation when local newspapers labeled him a "drug dealer" based on information provided by Defendants.

Callahan brings claims pursuant to § 1983 and state law against Soto, Davis, and the Borough, alleging his arrest and imprisonment were "without probable or just cause." Am. Compl. ¶ 30. For his § 1983 claims, Callahan alleges Soto and Davis violated his Fourth, Fifth, and Fourteenth Amendment rights by "falsely arresting and detaining [him] with no basis in fact or law to do so," *id.* ¶ 33, and seeks to hold the Borough liable for its failure to properly train and supervise its police officers. Callahan also brings state law claims for false imprisonment and negligence against all Defendants.

---

[3] Although Officer Davis observed Callahan exit and reenter the apartment building and proceed down the stairs to the basement, he could not see into the second floor of the building and thus saw no activity there.

3

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first should separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Defendants argue Callahan's § 1983 claims are barred by the applicable two-year statute of limitations because those claims accrued no later than August 5, 2009, when the charges against him were held over for trial, and Callahan did not commence this action until November 8, 2011. Callahan contends the action is timely because it was not until the jury acquitted him on November 13, 2009, that he "knew he could file his 1983 lawsuit." Pl.'s Br. in Supp. of Resp. to Defs.' Mot. to Dismiss 3.

A court may dismiss a case pursuant to Rule 12(b)(6) based on a statute of limitations defense when the defense "clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). Claims pursuant to § 1983 are subject to the statute of limitations applicable to personal injury actions in the state in which the action arises. *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). In Pennsylvania, the applicable

4

statute of limitations is two years.  *See* 42 Pa. Cons. Stat. Ann. § 5524(7); *Garvin*, 354 F.3d at 220.

While the length of the statute of limitations for a § 1983 claim is determined with reference to state law, the accrual date of such a claim "is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007).  The Supreme Court addressed the accrual of a § 1983 claim seeking damages for false arrest in *Wallace v. Kato*, holding the statute of limitations on such a claim "begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 396.  The petitioner in *Wallace* had obtained a reversal of his first-degree murder conviction on the ground that he had been arrested without probable cause in violation of the Fourth Amendment.  After prosecutors elected not to retry him, the petitioner filed a § 1983 action seeking damages arising from his unlawful arrest.  The claim was timely if it did not accrue until the petitioner was released from custody after the state dropped the charges against him, but was untimely if it accrued at an earlier time.  In resolving the accrual issue, the Supreme Court analogized the petitioner's claim to the common law torts of false arrest and false imprisonment, both of which challenge the victim's detention without legal process and thus accrue, for statute of limitations purposes, when the victim "becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges."[4]  *Id.* at 388-89.  Applying this rule, the Court held the statute of limitations on the petitioner's § 1983 claim began to run "when he appeared before the examining magistrate and was bound over for trial." *Id.* at 391.

Here, as in *Wallace*, Callahan's § 1983 claims allege his arrest and imprisonment were unlawful because Officer Soto and Davis lacked probable cause.  *See* Am. Compl. ¶¶ 27, 30, 33;

---

[4] The Court distinguished the torts of false arrest and false imprisonment from the tort of malicious prosecution, "which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id.* at 390.

Pl.'s Br. in Supp. of Resp. to Defs.' Mot. to Dismiss 1-2 ("Plaintiff brought this matter against the Officers and Borough of Bristol due to the fact that they did not have a basis for the arrest . . . ."). The claims thus accrued no later than August 5, 2009, when the charges against Callahan were held over for trial, because from that point forward, his detention was pursuant to legal process. Accordingly, because Callahan did not file this action until November 2011, his § 1983 claims are barred by the applicable two-year statute of limitations.[5]

Callahan nevertheless argues his § 1983 claims did not accrue until November 13, 2009, because it was not until he was exonerated that he knew his cause of action existed. He cites *Starks v. City of Philadephia*, No. 05-3352, 2005 U.S. Dist. LEXIS 25910 (E.D. Pa. Oct. 28, 2005), for the proposition that "[u]nder federal law, which governs the accrual of *section 1983* claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis for the *section 1983* action." *Id.* at *5 n.6 (internal quotation marks and citations omitted). This principle, however, does not help Callahan. Callahan does not suggest he was unaware his arrests were not supported by probable cause until the jury acquitted him. Moreover, the record belies such an argument in any event, as Callahan's attorney vigorously challenged the sufficiency of the evidence linking Callahan to Apartment B or the drugs found therein at the preliminary hearings on June 24, 2009, and August 5, 2009, and argued the search

---

[5] Callahan does not purport to bring a § 1983 claim for malicious prosecution, which would be subject to a different accrual rule. *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994) (noting "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor"). Indeed, at the oral argument on the motion to dismiss, after observing that the accrual rule Callahan advocates applies to claims of malicious prosecution but not false arrest or false imprisonment, this Court specifically noted that Callahan had not brought a malicious prosecution claim. Callahan did not suggest otherwise but instead urged that the delayed accrual rule applied to his false arrest and false imprisonment claims.

warrant was also issued without probable cause in an "Omnibus Pre-Trial Motion" filed in September 2009.[6]  Am. Compl. Ex. B at 47-50; *id.* Ex. C at 9-10; *id.* Ex. D ¶¶ 7-10.  Indeed, as noted, at the June 24 preliminary hearing, the judge accepted defense counsel's argument and dismissed the charges against Callahan based on the lack of evidence linking him to Apartment B.  Am. Compl. Ex B at 51-53.[7]

Because Callahan's federal claims pursuant to § 1983 will be dismissed with prejudice as time-barred, this Court will decline to exercise supplemental jurisdiction over his remaining state-law claims, which will be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

---

[6] Although the attorney argument portion of the August 5 preliminary hearing was not transcribed, it is apparent from defense counsel's cross-examination of Officer Soto that counsel attempted to contest any link between Callahan and the marijuana found in Apartment B.  *See* Compl. Ex. C at 4 (characterizing the deficiency in the June 24 preliminary hearing as the lack of evidence linking Callahan "to the apartment *and to the controlled substances*" (emphasis added)), 9-10 (questioning Soto about the woman present in the apartment at the time of the search and emphasizing the importance of "the layout [of the apartment] and who has control over what," as possession requires "the ability to exercise dominion and control").

[7] In *Wallace*, the Supreme Court also rejected an argument that a § 1983 false arrest claim did not accrue until the charges against the petitioner were dismissed.  There, the petitioner had argued for a delayed accrual date based on the Supreme Court's prior decision in *Heck v. Humphrey*, in which the Court held that a claim seeking damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," is not cognizable under § 1983, and thus does not accrue for statute of limitations purposes, until the underlying conviction or sentence has been invalidated.  *See* 512 U.S. 486-87.  In *Wallace*, however, the Court explained that the rule established in *Heck* applies to defer the accrual of a § 1983 claim only when success on the claim would impugn a conviction in existence at the time the claim would accrue under ordinary accrual rules.  549 U.S. at 393.  Thus, because, under ordinary accrual rules, a claim for false arrest or false imprisonment accrues before there is any conviction, *Heck* does not delay accrual of such claims.  *Id.*

An appropriate order follows.

                                           BY THE COURT:


                                            /s/ Juan R. Sánchez
                                          Juan R. Sánchez, J.